J-S20023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DONALD CROOKS | |
| Appellant | No. 1128 WDA 2015 |

Appeal from the Judgment of Sentence June 26, 2015
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002139-2014

BEFORE:  PANELLA, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                     **FILED APRIL 11, 2016**

Appellant, Donald Crooks, appeals from the judgment of sentence entered on June 26, 2015, as made final by the denial of post-sentence motions on July 8, 2015.  We affirm.

The trial court summarized the facts and procedural history in this matter as follows:

> The charges against Appellant arose from a series of incidents in which he sexually assaulted his daughter, K.L.C., [], from the age of 7 until she was about 11 or 12.
>
> The first incident occurred when K.L.C. was about 7 years old. K.L.C. was visiting Appellant, her biological father, when he was staying at a home where K.L.C.'s grandmother used to live. After taking a shower, K.L.C. exited the bathroom and Appellant told her to go to change in his room.  Appellant came into the room as K.L.C. was dressing, pulled out his penis through his zipper and told her to suck on it.  When K.L.C. told him no, Appellant repeated the demand.  K.L.C. said no again and Appellant pushed her head toward his penis but K.L.C. pulled away.

*Retired Senior Judge assigned to the Superior Court.

Appellant told K.L.C. to stay in the room and went to the kitchen to get ice cream sandwiches. Appellant got an ice cream sandwich for K.L.C.'s brother, who was watching Peter Pan in the living room, and one for K.L.C., and returned to the room. After K.L.C. finished eating the ice cream sandwich, Appellant took the wrapper and rubbed the remaining ice cream on his penis. Appellant told K.L.C. to lick the ice cream off. K.L.C. refused and Appellant put his hands on the back of K.L.C.'s head and tried to force it down towards his penis. K.L.C. pulled away and was then left to dress in the bathroom.

Another incident occurred at K.L.C.'s aunt's house, near the Whippy Dip ice cream shop. K.L.C. and Appellant arrived at the house after shopping together. Appellant retrieved the key from above the door, let them into the house, and locked the door behind him. K.L.C. went into the small "toy room" and Appellant followed her in. K.L.C. sat down on the mattress on the floor and Appellant sat beside her. K.L.C. was playing with a toy and laid down and Appellant pulled a blanket over the two of them and touched her clitoris over her underwear. At the same time, K.L.C. saw Appellant moving his hands under the blanket and believed Appellant was rubbing his own penis. K.L.C. told him to stop, but he did not. After some time, Appellant stopped, unlocked the front door, and replaced the key above the door.

One weekend during the summer, Appellant took K.L.C. to a construction site in a van he borrowed from his friend John Cooper. Appellant took K.L.C. into the woods in an area blocked from view by a dirt pile and asked her to show him her breasts. K.L.C. said no. When Appellant asked again and K.L.C. refused, Appellant tried to forcibly make K.L.C. show him her breasts but K.L.C. blocked him by crossing her arms over her chest. Appellant then put K.L.C. in a "choker hold," where he put his arm around K.L.C.'s neck and squeezed to make her pass out. K.L.C. passed out and when she woke up she was on the ground and Appellant's hand was in her pants, under her clothes, rubbing her clitoris. K.L.C. pulled his hand out of her pants, yelled at him and stood up. As K.L.C. tried to leave, Appellant grabbed her arm and tried to put her in a "choker hold" again but K.L.C. was able to break free, climb over the dirt pile, and get to the van. Appellant drove K.L.C. to the home of her uncle, Shawn Crooks.

On another occasion, when K.L.C. was 11 or 12, Appellant tried to touch K.L.C.'s breasts at John Cooper's house after Appellant took K.L.C. to Hot Topic at the mall to buy a bathing suit. K.L.C. went to the bathroom to try it on and Appellant asked her to come out so he could see. K.L.C. showed Appellant her bathing suit and Appellant told her to go to the basement to the other bathroom. Once K.L.C. and Appellant were in the basement, Appellant asked K.L.C. to see her breasts. When K.L.C. said no, Appellant untied the bathing suit behind K.L.C. neck. K.L.C. held the suit up, but Appellant pulled at the suit and continued to ask to see her breasts. Appellant then stopped and K.L.C. tied her suit, went upstairs, and changed into street clothes.

On another occasion, when K.L.C. was 11 or 12, Appellant brought K.L.C. to John Cooper's storage building. Appellant told K.L.C. to sit on a little wooden bed and to show him her breasts. K.L.C. said no and crossed her arms in front of her chest. Appellant stood in front of her, took his penis out of his pants, and began to stroke it. Appellant asked K.L.C. to show him her breasts a few more times and then said if she did not, that he would put his penis in her vagina.

The first person K.L.C. told about the abuse was her stepsister, [M.B.]. When K.L.C. ran away from home one night, [M.B.] told K.L.C.'s mother, [C.B.], who then brought the information to the police.

Appellant was charged with criminal attempt: involuntary deviate sexual intercourse ("IDSI") with a child, aggravated indecent assault of a child, endangering the welfare of a child, corruption of minors, indecent assault, indecent exposure and IDSI with a child. On March 19, 2015, Appellant was found guilty after a trial by jury of all charges except for the IDSI with a child offense. Appellant was represented by Attorney Maria Goellner at trial and sentencing.

On March 30, 2015, Appellant filed a [m]otion for [j]udgment of [a]cquittal and [m]otion for a [n]ew [t]rial, which was denied by [o]rder dated April 6, 2015.

Appellant was sentenced on June 26, 2015. [At his sentencing hearing, the court ordered Appellant to serve an aggregate term of 13 to 26 years in prison followed by five years' probation. In addition, the court designated Appellant as a sexually violent

- 3 -

predator (SVP).] Appellant filed a [p]ost-[s]entence [m]otion for [r]elief and [r]econsideration on July 6, 2015, which was denied by [o]rder dated July 8, 2015.

Appellant filed a [timely n]otice of [a]ppeal on July 22, 2015. On July 23, 2015, Appellant filed a [c]oncise [s]tatement of [m]atters [c]omplained of on [a]ppeal. [The trial court issued its Rule 1925(a) opinion on September 22, 2015.]

Trial Court Opinion, 9/22/15, at 1-4.

On appeal, Appellant raises the following questions for our review:

Did the court err by preventing Mr. Crooks from exercising his right to a meaningful trial by jury with imparticl [sic] jurors where counsel was precluded from conducting open voir dire and asking questions to jurors?

Did the court err in failing to grant a judgment of acquittal as to counts I – [V]I when the charging document alleged criminal acts of a lengthy and vague span of dates and a request for a bill of particulars was denied?

Did the court err in failing to grant a judgment of acquittal at count II, aggravated indecent assault, when the Commonwealth did not prove penetration beyond a reasonable doubt[?]

Did the court err in allowing the testimony of a witness whose identity was not disclosed to the defense until days before trial?

Did the court err in finding that the defendant was a sexually violent predator when there was a lack of evidence that the defendant's diagnosis of anti-social disorder affected his volitional capacity and there was no evidence of prior sexually deviant behavior?

Appellant's Brief at 2-3 (block capitalization omitted).

We have carefully reviewed the submissions of the parties, the certified record, the thorough opinion of the trial court, and the case law

applicable to the issues raised by Appellant. Based upon our review, we are satisfied that the trial court adequately and accurately addressed each of the issues raised on appeal. Specifically, we agree with the following assessments reached by the trial court: 1) Appellant was given appropriate latitude in questioning the venire and any limitations placed upon trial counsel were consistent with our rules prohibiting overly specific questions by a party; 2) the charging documents filed in this case adequately set forth the occurrence dates for course of conduct offenses where the victim was able to narrow the relevant timeframes for each offense by stating her age, her grade and school affiliation, and the time of year; 3) the victim's testimony that Appellant rubbed her clitoris provided sufficient evidence from which the jury could infer penetration for purposes of establishing aggravated indecent assault; 4) the admission of testimony from a non-eyewitness who was disclosed to the defense two weeks prior to trial did not constitute an abuse of discretion where such disclosure did not prejudice Appellant's ability to prepare for trial; and, 5) the Commonwealth introduced clear and convincing evidence that Appellant met the statutory criteria for SVP status, including the requirement that his anti-social personality disorder made him likely to reoffend. *See* Trial Court Opinion, 9/22/15, at 7-8, 11-13, 13-15, 15-17, and 23-29. As we concur wholly in the foregoing determinations, we adopt them as our own. In addition, we direct the parties to include a copy of the trial court's opinion, with the names of the

victim's stepsister and mother redacted, with all future filings pertaining to our disposition of this appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2016

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
           : OF ERIE COUNTY, PENNSYLVANIA
      v.       : CRIMINAL DIVISION
           :
DONALD CROOKS,      :
  Defendant       : NO. 2139 OF 2014

## OPINION

Appellant, Donald Crooks, filed a Notice of Appeal on July 22, 2015, from the judgment of sentence imposed on June 24, 2015, after a jury trial. This Opinion is in response to the Statement of Matters Complained of on Appeal filed July 27, 2015.

## BACKGROUND

Appellant was convicted after a four day jury trial on March 19, 2015 of criminal attempt: involuntary deviate sexual intercourse, aggravated indecent assault of a child, endangering the welfare of a child, corruption of minors, indecent assault, and indecent exposure.[1]

The charges against Appellant arose from a series of incidents in which he sexually assaulted his daughter, K.L.C.,       , from the age of 7 until she was about 11 or 12.

The first incident occurred when K.L.C. was about 7 years old. *Trial Transcript Day 2, March 18, 2015 ("T.T.2")*, p. 45. K.L.C. was visiting Appellant, her biological father, when he was staying at a home where K.L.C's grandmother used to live. *T.T. 2, p. 40*. After taking a shower, K.L.C. exited the bathroom and Appellant told her to go to change in his room. *T.T. 2, p. 42*. Appellant came into the room as K.L.C. was dressing, pulled out his penis through his zipper and told her to suck on it. *T.T. 2, pp. 43-44*. When K.L.C. told him no, Appellant repeated the demand. *T.T. 2, p. 43*. K.L.C. said no again and Appellant pushed her head toward his penis but K.L.C pulled away. *T.T. 2, p. 44*.

---

[1] 18 P.S. §901(a); 18 P.S. §3125(b); 18 P.S. §4304(a)(1); 18 P.S. §6301(a)(1)(ii); 18 P.S. §3126(a)(7); 18 P.S. §3127(a).

1

Appellant told K.L.C to stay in the room and went to the kitchen to get ice cream sandwiches. *T.T.2, pp. 45-46.* Appellant got an ice cream sandwich for K.L.C.'s brother, who was watching Peter Pan in the living room, and one for K.L.C., and returned to the room. *T.T. 2, p. 46.* After K.L.C. finished eating the ice cream sandwich, Appellant took the wrapper and rubbed the remaining ice cream on his penis. *T.T. 2, pp. 47-48.* Appellant told K.L.C. to lick the ice cream off. *T.T. 2, p. 48.* K.L.C. refused and Appellant put his hands on the back of K.L.C.'s head and tried to force it down towards his penis. *T.T. 2, pp. 49-50.* K.L.C. pulled away and was then left to dress in the bathroom. *T.T. 2, p. 51.*

Another incident occurred at K.L.C.'s aunt's house, near the Whippy Dip ice cream shop. *T.T. 2, p. 52.* K.L.C and Appellant arrived at the house after shopping together. *T.T. 2, p. 52.* Appellant retrieved the key from above the door, let them into the house, and locked the door behind him. *T.T. 2, pp. 53, 55.* K.L.C went into the small "toy room" and Appellant followed her in. *T.T. 2, pp. 56-57.* K.L.C sat down on the mattress on the floor and Appellant sat beside her. *T.T. 2, p. 58.* K.L.C. was playing with a toy and laid down and Appellant pulled a blanket over the two of them and touched her clitoris over her underwear. *T.T. 2, pp. 59-60.* At the same time, K.L.C. saw Appellant moving his hands under the blanket and believed Appellant was rubbing his own penis. *T.T. 2, p. 60-61.* K.L.C. told him to stop, but he did not. *T.T. 2, p. 61.* After some time, Appellant stopped, unlocked the front door, and replaced the key above the door. *T.T. 2, p.62.*

One weekend during the summer, Appellant took K.L.C. to a construction site in a van he borrowed from his friend John Cooper. *T.T. 2, p. 67-68.* Appellant took K.L.C. into the woods in an area blocked from view by a dirt pile and asked her to show him her breasts. *T.T. 2, pp. 71, 75.* K.L.C. said no. *T.T. 2, p. 72.* When Appellant asked again and K.L.C. refused, Appellant

2

tried to forcibly make K.L.C. show him her breasts but K.L.C. blocked him by crossing her arms over her chest. *T.T. 2, p. 72.* Appellant then put K.L.C. in a "choker hold," where he put his arm around K.L.C.'s neck and squeezed to make her pass out. *T.T. 2, pp. 72-73.* K.L.C. passed out and when she woke up she was on the ground and Appellant's hand was in her pants, under her clothes, rubbing her clitoris. *T.T. 2, p. 75.* K.L.C. pulled his hand out of her pants, yelled at him and stood up. *T.T. 2, p. 75.* As K.L.C. tried to leave, Appellant grabbed her arm and tried to put her in a "choker hold" again but K.L.C. was able to break free, climb over the dirt pile, and get to the van. *T.T. 2, p. 77.* Appellant drove K.L.C. to the home of her uncle, Shawn Crooks. *T.T. 2, p. 77.*

On another occasion, when K.L.C. was 11 or 12, Appellant tried to touch K.L.C.'s breasts at John Cooper's house after Appellant took K.L.C. to Hot Topic at the mall to buy a bathing suit. *T.T. 2, p. 82.* K.L.C. went to the bathroom to try it on and Appellant asked her to come out so he could see. *T.T. 2, pp. 82-83.* K.L.C. showed Appellant her bathing suit and Appellant told her to go to the basement to the other bathroom. *T.T. 2, p. 83.* Once K.L.C. and Appellant were in the basement, Appellant asked K.L.C. to see her breasts. *T.T. 2, p. 83.* When K.L.C. said no, Appellant untied the bathing suit behind K.L.C.'s neck. *T.T. 2, p. 84.* K.L.C. held the suit up, but Appellant pulled at the suit and continued to ask to see her breasts. *T.T. 2, p. 84.* Appellant then stopped and K.L.C. tied her suit, went upstairs, and changed into street clothes. *T.T. 2, p. 85.*

On another occasion, when K.L.C. was 11 or 12, Appellant brought K.L.C. to John Cooper's storage building. *T.T. 2, p. 90.* Appellant told K.L.C. to sit on a little wooden bed and to show him her breasts. K.L.C. said no and crossed her arms in front of her chest. *T.T. 2, p. 89.* Appellant stood in front of her, took his penis out of his pants, and began to stroke it. *T.T. 2, pp.*

3

*89-90.* Appellant asked K.L.C. to show him her breasts a few more times and then said if she did not, that he would put his penis in her vagina. *T.T. 2, p. 90.*

The first person K.L.C. told about the abuse was her stepsister, M.B. *T.T. 2, p. 109.* When K.L.C. ran away from home one night, M.B. told K.L.C.'s mother, C.B. , who then brought the information to the police. *T.T. 2, pp. 110-112.*

Appellant was charged with criminal attempt: involuntary deviate sexual intercourse ("IDSI") with a child, aggravated indecent assault of a child, endangering the welfare of a child, corruption of minors, indecent assault, indecent exposure and IDSI with a child. On March 19, 2015, Appellant was found guilty after a trial by jury of all charges except for the IDSI with a child offense. Appellant was represented by Attorney Maria Goellner at trial and sentencing.[2]

On March 30, 2015, Appellant filed a Motion for Judgment of Acquittal and Motion for a New Trial, which was denied by Order dated April 6, 2015.

Appellant was sentenced on June 26, 2015. Appellant filed a Post Sentence Motion for Relief and Reconsideration on July 6, 2015, which was denied by Order dated July 8, 2015.

Appellant filed a Notice of Appeal on July 22, 2015. On July 23, 2015, Appellant filed a Concise Statement of Matters Complained of on Appeal. The following trial issues will be addressed herein.[3]

1. The Court erred in allowing K.L.C., the victim, to testify and/or admitting the portion of the Child Advocacy Center video in which she references being shown pornography;
2. The Court erred in allowing M. B. and C.B. to testify;
3. The Court erred in limiting Rebecca Grant's testimony;
4. Appellant was prevented from conducting meaningful *voir dire*;
5. The Court erred in not granting the judgment of acquittal as to Counts I-IV because of the vague nature of the dates of the criminal conduct charged;

---

[2] Née Krupicz.

[3] The pre-trial ruling denying Appellant's challenge to the competency and taint of the victim's testimony as well as Appellant's request for a Bill of Particulars were addressed by the Honorable Judge Shad Connelly.

4

6. The Court erred in not granting judgment of acquittal at Count II because the evidence was insufficient to sustain the conviction;

7. The Court erred in instructing the jury related to Count II, Aggravated Indecent Assault, when clarification was requested;

8. The Court failed to instruct the jury about vagueness in relation to credibility;

9. Appellant was prevented from exercising his right to testify on his own behalf;

10. The Court erred in not granting a new trial because the jury verdict was inconsistent; and

11. The Court erred in determining Appellant to be a "sexually violent predator."

These issues will be addressed *seriatim*.

## WITNESS CLAIMS

Appellant makes various claims related to the admission or limitation of witness testimony.

**A. K.L.C.**

*1. Competency to Testify*

Appellant argues error in finding K.L.C. competent and/or untainted to testify because she came forward with new claims of abuse after she went on a ride along with Trooper Sean Pierce and Trooper Olowin. These issues were addressed by the Honorable Judge Shad Connelly. *See Pre-Trial Hearing Transcript dated December 5, 2014; Order dated December 8, 2014.*

*2. Admission of Child Advocacy Center Interview*

Appellant contends the Court improperly admitted the portion of K.L.C.'s Child Advocacy Center ("CAC") interview in which she talks about Appellant showing her pornography. Specifically Appellant argues the conduct was not charged in the information, was extremely inflammatory and/or prejudicial and was improperly admitted under the Tender Years Doctrine and/or as a prior consistent statement.

5

Evidence does not have to be "charged in the information" to be admissible. The victim's prior statement about the Appellant showing the victim pornography was consistent with her trial testimony. The evidence of pornography was relevant to Appellant's grooming of his sexual victim and also admissible under the Tender Years doctrine.

"Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of . . . fabrication, bias, improper influence, or motive or faulty memory and the statement was made before that which has been charged existed or arose." Pa.R.E. 613. In cases of minor sexual assault, even unimpeached testimony may be admitted when the witness' status alone is such that her testimony may be called into question because of age. *Commonwealth v. Hunzer*, 868 A.2d 498, 512 (Pa.Super. 2005) Admission of prior consistent statements on such grounds is a matter left to the sound discretion of the trial court, to be decided in light of the character and degree of impeachment. *Id.*

The CAC interview was conducted in August of 2013, prior to charges being filed. K.L.C.'s interview was shown to the jury after K.L.C testified about a general course of abuse by Appellant and specific incidents. On cross-examination, K.L.C. was questioned extensively to discredit her recollection of the incidents in question. Her memory of the time, place, and surrounding circumstances was called into question. K.L.C.'s memory was challenged not only to a specific incident, but to the ongoing conduct as a whole. Appellant inferred K.L.C. was making up the abuse *en toto*, not just one specific incident.

Appellant ignores the fact the reference to pornography arguably showed Appellant was grooming K.L.C. for his own sexual gratification. It is evidence of an ongoing course of conduct

6

by Appellant. The specific incidents to which K.L.C. testified were also part of this continuous course of conduct. The reference to pornography therefore was properly admitted as a prior consistent statement.

Separately, the reference to pornography was properly admitted under the tender years hearsay exception, which allows for an out of court statement made by a child age 12 or younger describing, *inter alia*, offenses enumerated in 18 Pa.C.S.A 31(relating to sexual offenses) if relevant, reliable and the child testifies at the proceeding. 42 Pa.C.S.A. §5985.1(a).

Here, the CAC interview was conducted with K.L.C. when she was 12 years old. In the interview, she discussed a series of incidents during which she was sexually assaulted by Appellant. She also discussed an ongoing course of conduct over the 5 years during which abuse occurred which also included the showing of pornography. The reference to pornography was therefore properly admitted under the tender years hearsay exception.

B. M.B.

Appellant argues the Court erred in allowing ' M.B. to testify. Specifically, Appellant claims he suffered prejudice due to the delayed disclosure of her identity as a witness and delayed disclosure of her police statement.

Upon a motion for pretrial discovery, the Court may order the Commonwealth to disclose and allow the defense to inspect, *inter alia*, the names and addresses of eyewitnesses. Pa.R.Crim.P. 573(B)(2)(a)(i). The Commonwealth is under no obligation to disclose non-eyewitness witnesses, however. *Commonwealth v. Dietterick*, 631 A.2d 1347, 1351 (1993). Additionally, courts have found that as little as a one day period to prepare for cross examination following the disclosure of the witness by the Commonwealth is sufficient notice. See *Commonwealth v. Figueroa*, 859 A.2d 793, 800 (Pa.Super. 2004).

Appellant was informed of the Commonwealth's intent to call . M. B. about two weeks before the start of trial, well beyond the one day threshold accepted in *Figueroa, supra. T.T. 2, p. 5.* Appellant had ample time to prepare cross examination and trial strategy with the knowledge that M. B. would testify. The Commonwealth had no duty to disclose their intent to have M. B testify as a witness and even if it did, Appellant had sufficient notice. Appellant has not established any prejudice by the timing of the disclosure of this Commonwealth witness in terms of Appellant's trial strategy or defense. Appellant's defense has always been a complete denial of any sexual conduct with the victim.

Appellant also argues M. B.'s testimony should have been excluded because it was cumulative and prejudicial. Admissibility of evidence is within the sound discretion of the trial court and will not be reversed absent abuse of discretion. *Commonwealth v. Gonzalez,* 109 A.3d 711, 726 (Pa. Super. 2015). "Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact." *Id.* A court may exclude relevant evidence if it is needlessly cumulative. Pa.R.E. 403.

M. B. is the victim's stepsister and was the first individual to whom she disclosed the incidents of abuse. *T.T. 2, pp. 109-110, 156-158.* Ultimately, she was the person who told K.L.C.'s mother about the allegations. *T.T. 2, pp. 111, 159.* . M. B. spoke to the circumstances surrounding K.L.C.'s disclosure, her demeanor, and the aftermath.

M. B.'s testimony corroborated K.L.C.'s testimony about the disclosure and explained how the abuse came to be known by her mother. Consequently, her testimony was relevant, given by the only person who could give it and was not cumulative. There was no error in permitting this testimony about the victim's disclosure.

8

## c. C.B.

Appellant argues error in allowing ⎯ C.B. ⎯ to testify because her testimony was cumulative, prejudicial, and only served to bolster the K.L.C's testimony.

C.B. ., K.L.C.'s mother, reported the incidents of abuse to the police. *T.T. 2, p. 174.* She gave testimony about K.L.C.'s background and her history with Appellant, which served to corroborate K.L.C's testimony and explain why K.L.C. was visiting her biological father alone on weekends and where those visits would occur. *T.T. 2, pp. 170-172.* also testified about the night she was told about the abuse by M.B. ., including K.L.C.'s demeanor and actions. *T.T. 2, p. 173.* Additionally, C.B ..: corroborated K.L.C.'s testimony that they did not discuss the specifics of the abuse. *T.T. 2, p. 174.*

Consequently, C.B.'s · testimony was relevant and properly permitted. This testimony was not cumulative because it was given by the only person who could give it.

## D. Rebecca Grant

Appellant argues the Court erred in limiting the testimony elicited from Rebecca Grant related to K.L.C.'s motive for fabricating allegations against Appellant. This claim is waived and inaccurate.

Appellant has not preserved this issue for appeal. Appellant failed to make a timely and specific objection at the appropriate stage of the proceedings before the trial court. *Commonwealth v. Houck*, 102 A.3d 443, 451 (2014). A party must object to "errors, improprieties, or irregularities at the earliest possible state of the adjudicatory process" to allow for the error to be remedied and avoid unnecessary appeals. *Tindall v. Friedman*, 970 A.2d 1159, 1174 (Pa.Super. 2009). Failure to make a timely, proper objection will result in waiver of an issue. *Houck,* 102 A.3d at 451. Additionally, raising the issue in a statement of errors complained

of on appeal does not undo a waiver as it is not a substitute for the contemporaneous objection required at trial. *Commonwealth v. Ali*, 10 A.3d 282, 293 (2010).

This argument is also unsupported by the record. When the prosecution requested a proffer regarding Rebecca Grant's testimony, Appellant's counsel explained:

> MS. KRUPICZ: Judge, so Becca Grant will be called forth to say that the night that Keara Crooks ran away in August of 2013 when these allegations came out for the first time. The inference, I think, to the jury has been, although not explicitly stated, she ran away, she came back, she was upset, and then this all came out. Becca Grant would simply say, and I will -- before she's called I would ask for a few minutes recess, but she would testify that she didn't say anything about her dad, she didn't say anything about molestation or anything like that, said basically that she ran away because I can say she got in a fight with her mom. I believe what she would actually say is that her mom and possibly stepdad beat her, but I can certainly instruct her not to say that, and just that they got into a fight, and that's why, nothing about dad didn't say anything about dad. Also, that M.B. was not with her, because M.B. had testified that she went with her.
> *T.T. 3, pp. 12-13.*

After a brief discussion about possibly leading Ms. Grant because she is a minor witness, the Court noted:

> THE COURT: The only thing I'd say, we talked about this yesterday, is you've got to be careful because if you go beyond that, then you're opening up a can of collateral worms on collateral matters that may spill over to your client also.
> MS. KRUPICZ: Understood.
> *T.T. 3, p. 14.*

Importantly, no objection was placed on the record by Appellant regarding Rebecca Grant's testimony. The issue is therefore waived.

Assuming *arguendo* the issue is not waived, it is nonetheless without merit. As the record reflects Rebecca Grant testified about all of the matters within Appellant's proffer. During direct examination, Rebecca Grant testified that despite their close relationship, K.L.C. never disclosed

10

any incidents of abuse to her, including the night she ran away and the incidents were eventually disclosed to $\mathcal{C}.\mathcal{B}.$ . *T.T. 3, p. 74.* Instead, Ms. Grant testified K.L.C. told her she was running away because of a fight with her mom and stepdad and was ultimately brought home by the police. *T.T. 3, p. 73.*

Ms. Grant therefore did testify to a motive K.L.C. had to lie—a fight with her family, running way, and being brought home by the police. The sum of Ms. Grant's actual testimony was consistent with Appellant's proffer and enabled Appellant to challenge K.L.C.'s credibility.

Moreover, as made clear by the Court's comments, any limitation to her testimony was intended to prevent issues being discussed that could have prejudiced Appellant. Consequently, Appellant's argument is specious and Appellant has suffered no prejudice.

## *VOIR DIRE*

Appellant claims he was prevented from exercising his right to conduct meaningful *voir dire* because he was prevented from "open *voir dire*" into prospective jurors' feelings about whether young people lie about sex, their feelings on child molestation, and people accused of such crimes.

Appellant's argument is contradicted by the record. Appellant was given ample opportunity beyond reviewing the written questionnaire responses to ask a multitude of questions to the jury pool and conducted individual *voir dire* with nearly each prospective juror. To say Appellant was denied the chance to conduct "open *voir dire*," a phrase given no legal definition or authority by Appellant, is disingenuous.

The purpose of *voir dire* is to secure a competent, fair, impartial and unprejudiced jury. *Commonwealth v. Noel*, 104 A.3d 1156, 1168 (Pa. 2014). The scope of *voir dire* is within the sole discretion of the trial court and will not be reversed on appeal "absent palpable error."

11

*Commonwealth v. Mattison*, 82 A.3d 386, 397 (Pa. 2013). Specifically, the form, wording, or nature of questioning by a party is subject to the discretion of the trial court and does not constitute error when there has been an appropriate inquiry into the potential jurors' attitudes or prejudices toward a relevant subject. See *Wytiaz v. Deitrick*, 954 A.2d 643, 648 (Pa. Super. 2008).

In this case, prospective jurors completed the juror questionnaires after arrival in the morning and the lawyers were given the rest of the morning to review the juror's written responses before questioning jurors. After lunch, the lawyers were given the opportunity to ask follow-up questions of the jury pool without the Court present. The lawyers asked questions of the jury pool from 1:21 p.m. until 4:43 p.m. The record reflects the bulk of the questions were asked by Appellant.

Appellant asked a series of open ended questions related to the jury questionnaire. *T.T. 1, pp. 69-71.* Appellant then conducted individual *voir dire* of nearly every member of the jury panel. Appellant asked the jury pool specific questions related to the case and elicited responses from individual jurors. After generous latitude with Appellant, the Commonwealth finally objected. In opposing the Commonwealth's objection, Appellant's counsel explained she intended to ask the jury pool about whether they believed teenagers could lie, including about potentially embarrassing subjects like sex. *T.T. 1, pp. 75-76, 79-80.* In response, the Court explained:

> THE COURT: See, here's the difficulty I have. Voir dire isn't to try your case and to get jurors who agree with your point of view or to weed them out. I mean, it's to ferret out any biases or prejudice that they may have. But to argue your case is really what you're doing as I hear what you're saying.
> T.T. 1, p. 78.

12

What the record reflects is that Appellant in fact asked the jury panel about teenager's propensity to lie, especially about sex. *See T.T. 1, pp. 71-73.* Therefore, Appellant's alleged error on appeal is factually unsupported.

The Superior Court has routinely upheld trial court decisions to limit overly specific *voir dire* questions by parties. *See e.g., Commonwealth v. Marrero,* 687 A.2d 1102, 1108 (Pa. 1996). As the Court noted, such questions seek to determine what jurors would be sympathetic to a particular party's position rather than neutral. Such questions are improper for *voir dire.*

Appellant was able to effectively question the jury pool about opinions and potential biases that might affect their ability to serve as a juror and was permitted to question in depth individual jurors. Appellant had a full and meaningful opportunity to participate in *voir dire.* The record establishes Appellant has not identified any prejudice. Accordingly, there was not an abuse of discretion in the broad latitude of *voir dire* given to Appellant.

### JUDGMENT OF ACQUITTAL: COUNTS I-VI

Appellant states the Court erred by not dismissing the charges and denying the Request for Bill of Particulars because the charging document was vague as to when the offenses occurred. Specifically, Appellant argues because the criminal acts were charged as occurring between 2007 and 2012, the evidence was insufficient to convict and Appellant's right to establish a defense was prohibited.

At the outset, the Court notes Appellant's Request for Bill of Particulars was denied as untimely by Judge Connelly. *See Pre-Trial Hearing Transcript December 5, 2014; see also Order dated December 8, 2014.*

Separately, the charging document was sufficiently specific regarding the dates of the offenses. It is the duty of the Commonwealth to fix a date of when an alleged offense occurred

13

with reasonable certainty. *Commonwealth v. Jette*, 818 A.2d 533, 535 (Pa.Super. 2003).

However, the Commonwealth is not required to prove specific dates for each crime and is afforded latitude when charging certain crimes—specifically when the case involves an ongoing course of conduct, including sexual offenses against a child victim. *Commonwealth v. Riggle*, 2015 PA Super 147 (July 7, 2015); *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 990 (Pa. Super. 2007). The due process concerns associated with requiring charges to relate to specific dates are satisfied where the victim can determine times when the sexual abuse began and ended.

Here, Appellant was found guilty of multiple incidents of abuse that occurred over the course of 5 years—acts that constitute a continuing course of conduct. Each charge was based on multiple incidents and was charged as a continuous course of conduct. Additionally, K.L.C.'s testimony narrowed the time frame of each of the incidents. The time of the first incident was established by where Appellant lived and K.L.C.'s age. K.L.C. testified the abuse began when K.L.C. was 7 years old. Similarly, K.L.C. narrowed when each other incident occurred based on her age at the time of each other incident, where she went to school, the time of year—generally summer, and grade she was in. *T.T. 2, pp. 138-139*. K.L.C. was also questioned on cross-examination about her lack of ability to remember dates. *T.T. 2, pp. 138-139*. K.L.C. testified the abuse occurred until she disclosed the abuse to her step-sister, M.B. and at least one time after. Therefore the dates of the offenses were charged with sufficient specificity.

Appellant's argument that the dates of the charging document undermined Appellant's ability to prepare a defense is similarly without merit. In fact, Appellant presented multiple witnesses to challenge K.L.C.'s credibility and provide a defense. Appellant called Amy Leeburg, Denise Boyd, Shawn Crooks, Elizabeth Crooks and Lynne Fullerton to testify each observed Appellant interact with K.L.C. and never saw any inappropriate interactions between

14

them and K.L.C. did not report abuse to them. *T.T. 3, pp. 26-65.* Likewise, Attorney John Cooper, a Commonwealth witness, testified on cross examination to the lack of any inappropriate behavior by Appellant and the appropriate interaction between Appellant and the victim. *T.T. 2, pp. 204-206.* Appellant was therefore not deprived of the ability to prepare or present a defense.

## JUDGMENT OF ACQUITTAL: COUNT II

Appellant argues the Commonwealth failed to prove penetration beyond a reasonable doubt and therefore the Court erred in not granting judgment of acquittal at Count II, Aggravated Indecent Assault.

When evaluating a challenge to the sufficiency of the evidence such as this, the evidence must be viewed in the light most favorable to the Commonwealth. *Commonwealth v. Hargrave,* 745 A.2d 20, 22 (Pa.Super. 2000). Evidence will be deemed sufficient when it establishes each material element of the crime charged, and the commission thereof by the accused, beyond a reasonable doubt. *Commonwealth v. Jones,* 874 A.2d 108, 120-121 (Pa.Super. 2005). The Commonwealth may sustain its burden of proof wholly by circumstantial evidence. *Commonwealth v. Hopkins,* 747 A.2d 910, 913 (Pa.Super. 2000). It is within the province of the jury to pass upon the credibility of witnesses and determine the weight to be accorded the evidence adduced. *Commonwealth v. Feese,* 79 A.3d 1101, 1122 (Pa.Super. 2013).

A review of the record confirms the Commonwealth met its burden of proof with respect to the crime of aggravated indecent assault.

(a) **Offenses defined.**[...] [A] person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

(1) the person does so without the complainant's consent;

15

events as presented in the CAC video. Therefore, the Commonwealth established Appellant is guilty of aggravated indecent assault beyond a reasonable doubt.

## JURY INSTRUCTIONS

Appellant claims the Court erred in its phrasing of two specific jury instructions, to-wit, aggravated indecent assault, and credibility of the witness. A trial court has broad discretion in phrasing instructions to the jury and can choose its own so long as the law is clearly, adequately and accurately presented to the jury for consideration. *Commonwealth v. Charleston*, 94 A.3d 1012 (Pa. 2014).

### A. Aggravated Indecent Assault

Appellant argues the Court erred in its clarification of the law on aggravated indecent assault when it directed the jury's attention to the alleged penetration to the "clitoris/labia area at the construction site" and then read the elements of the offense to include the "entrance of the vagina." Appellant specifically contests the jury instruction gave after the jury asked for a more specific instruction on the issue of penetration.[4]

After deliberating for more than an hour, the jury requested, *inter alia*, clarification on the elements of aggravated indecent assault. In directing the jury's attention to the specific question, the Court noted it was "the charge that involves the digital penetration **which is alleged to have occurred to the child's clitoris and labia area at the construction site.**" (*Emphasis added*). The Court then repeated the elements of the offense:

> THE COURT: Now, that offense itself, I want to give you the elements again, all right? And the reason I'm going to do that is it ties in with another question that you have. The elements of the aggravated indecent assault are whether the defendant penetrated however slightly the genital area of Keara with a finger, that he did not do so for a good faith medical, hygienic or law

---

[4] Although no objection was made at the time of the clarification, the original phrasing of this instruction was objected to, which was similar to the issue complained of on appeal. The issue is therefore preserved.

17

(2) the person does so by forcible compulsion;

(3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

(4) the complainant is unconscious or the person knows that the complainant is unaware that the penetration is occurring;

(5) the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance;

(6) the complainant suffers from a mental disability which renders him or her incapable of consent;

(7) the complainant is less than 13 years of age; or

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

**(b) Aggravated indecent assault of a child.** -- A person commits aggravated indecent assault of a child when the person violates subsection (a)(1), (2), (3), (4), (5) or (6) and the complainant is less than 13 years of age.

18 Pa.C.S.A. § 3125.

K.L.C. testified that when she was about 11 or 12 years old, Appellant took her to a construction site and took her for a walk in the woods. While in the woods, he asked to see her breasts. When K.L.C. refused Appellant's request, he put her in a "choke hold" which caused her to pass out. K.L.C. testified when she woke up, Appellant had his hand in her pants, under her underwear and was rubbing her clitoris. As soon as she woke up, she pulled Appellant's hand out of her pants and got up off of the ground.

The jury made the factual determination that the touching K.L.C. described was sufficient to constitute aggravated indecent assault. It was done by forcible compulsion and without a good faith exception set out by the statute. It was done without K.L.C.'s consent, as she was both under 13 years old and unconscious at the time. The jury found K.L.C.'s testimony to be credible. Her testimony was consistent throughout trial and consistent with the prior recitation of

16

enforcement purpose, that the penetration of the genital area was without her consent, and, lastly, that at the time she was under 13 years of age.

Now, as I indicated to you, the phrase penetration however slight is not limited to the penetration of the vagina, the entrance of the vagina is sufficient. **And that's up to you to determine whether the entrance of the vagina, if you find that that occurred in this case.**

So those are the elements of that offense. And that offense, again, relates to the touching of the vaginal area at the construction site.

*Trial Transcript Day 3, March 19, 2015 ("T.T. 3"), pp. 142-143 (emphasis added).*

The Court's recitation of the alleged incident was done to focus the jury's attention. The jury was presented evidence over multiple days and had a large body of law to consider. In the original instructions the Court went so far as to explicitly remind the jurors they, not the Court were the finders of fact:

THE COURT: I want to clarify one thing. Well, actually two. First of all, in explaining the offenses for you and in trying to correlate what the Commonwealth is alleging to that particular offense, which I think I have to do so the two fit together for you, and when I do that, **I am describing and I believe I have continually said that this is what the Commonwealth is alleging and the defense disputes that. I'm not -- when I give that information to you, I'm not trying to convey to you my opinion about factually what occurred in this case. As I told you at the beginning of this trial, you're the fact finders. I give the law, but I can't tell you what to find factually.**

*T.T. 3, p. 136 (emphasis added).*

During the opening instructions to the jury, in explaining their roles as fact finders, the jurors were informed it was up to them (and not the lawyers and/or judge) to determine the facts:

THE COURT: As the jurors, you are what we call fact finders. You're members of the community. You don't necessarily know anything about this case and you don't have any fixed opinions or biases and you can sit and listen to the evidence and determine factually what occurred in this case and then, on the basis of the facts as you find them to be, whether the Commonwealth has met its burden of proof regarding any criminal charge lodged against the defendant.

Now, that determination of the facts is solely and entirely up to you. The lawyers are going to argue to you about what you should find factually, but that's

18

up to you. **As the Judge, I give you the law that applies in this case, but I cannot tell you what to find factually.**

Now, in large part, you determine the facts in this case by making credibility determinations, and by that I mean believability. For every witness that you hear in this case, you're going to be asked to judge the credibility of that witness or the believability. You're able to determine whether you believe everything, some of, or none of what the witness testifies to.

*T.T. 1, pp. 140-141 (emphasis added).*

Directing the jury's attention to the alleged conduct was both proper and necessary. Separately, the instruction and clarification for aggravated indecent assault adequately and accurately presented to the law. 18 Pa.C.S.A. §3125; *Commonwealth v. Hawkins*, 614 A.2d 1198, 1199 (Pa.Super. 1992) (determining entrance of the labia area is sufficient to constitute penetration).The claim is therefore without merit.

### B. Credibility

Appellant argues the Court erroneously failed to instruct the jury that it could consider vagueness in weighing credibility.

This issue is waived as Appellant never requested a jury instruction about vagueness. Prior to the jury instructions being given, the Court asked counsel if either had any requested jury instructions. Appellant requested various instructions related to witness credibility including credibility of witnesses in general; false in one, false in all; conflicting testimony; number of witnesses; failure to make prompt complaint in certain sexual offenses; and impeachment or substantive evidence inconsistent statement.[5] All but the last were included in the jury charge to the jury. No objections or requests for additions related to considering vagueness in weighing credibility were made after the jury charge was given either. *T.T. 3, pp. 136, 138.* This issue is therefore waived.

---

[5] 4.17; 4.15; 4.09; 7.04; 4.13(A); 4.08(A).

19

Consideration of vagueness is arguably subsumed within the instructions on credibility factors. See T.T. 1, pp. 125-128. This issue is also speculative at best with no showing of prejudice.

## APPELLANT'S RIGHT TO TESTIFY

Appellant argues he was prevented from exercising his right to testify on his own behalf when the Court ruled the Commonwealth could introduce evidence of his prior incarcerations and drug use if he chose to testify.

Both of these allegations are inaccurate. As the record reflects, Appellant was never informed that if he testified his prior incarcerations and drug use would be admissible. There was a ruling about Appellant's convictions for *crimen falsi*, not about Appellant's prior incarcerations. There was never a final ruling entered on Appellant's drug use since a ruling was reserved for the time of Appellant's testimony.

The decision whether to testify on one's own behalf is ultimately to be made by the accused after consultation with counsel. *Commonwealth v. O'Bidos*, 849 A.2d 243, 250 (Pa. Super. 2004). At trial, Appellant knowingly and voluntarily decided not to testify.

> THE COURT: Now, you have the ability to testify at this trial if you would like. That decision whether or not to testify is your decision. Your lawyer can advise you one way or another, but you have to make your own independent decision as to whether or not to testify. If you decide not to testify, then I will instruct the jury that they cannot draw any adverse inference from that. In other words, they can't hold it against you because you did not testify. And the reason for that is you don't have to testify, all right.
>
> MR. CROOKS: Yes, Your Honor.
>
> THE COURT: You have a constitutional right to remain silent. Do you understand that?
>
> MR. CROOKS: Yes, Your Honor, I do.
>
> THE COURT: In the event that you do decide to testify, then evidence can be admitted for any convictions that you have for crimes involving dishonesty, the

20

legal term is crimen falsi, and apparently there are several that you have that are admissible. And I would instruct the jury, as I said moments ago, that that evidence is admitted for a very limited purpose. And the limited purpose is to judge your -- the credibility of any testimony you give at trial. And I would specifically tell them that they cannot use that evidence as a basis to find you guilty. In other words, they can't infer that you committed the present crimes from the fact that you have prior convictions. Do you understand that?

MR. CROOKS: Yes, Your Honor, I do.

THE COURT: Do you have any questions about that at all?

MR. CROOKS: No, Your Honor, I do not.

THE COURT: Have you made a decision whether or not you want to testify?

MR. CROOKS: Yes, Your Honor, I have.

THE COURT: Okay. And is that your own independent -- I'm not going to ask you what it is, but is that your own independent decision?

MR. CROOKS: Yes, Your Honor.

THE COURT: Okay. All right.

> *T.T. 3, pp. 10-12.*

There is no factual basis to support Appellant's allegation of error. First, Appellant's *crimen falsi* convictions, and not prior incarcerations, were ruled upon. Evidence of Appellant's convictions would have been relevant to Appellant's credibility as a trial witness.

While evidence of prior crimes is not admissible for the purpose of demonstrating a criminal defendant's propensity to commit crimes, a prior conviction that involves a crime of dishonesty within the last ten years is *per se* admissible to impeach a defendant's credibility. *Commonwealth v. McEnany*, 732 A.2d 1263, 1270 (1999). Informing Appellant of his alternatives allowed him to make an independent and knowing decision whether to testify. Appellant's allegation he was prevented from testifying by the Court is frivolous.

By way of a Motion in Limine, Appellant sought to preclude any evidence of evidence of his drug use should he testify. There was never a final ruling on this issue:

21

MS. KRUPICZ: Judge, just briefly, I wanted to put on the record what we talked about yesterday, namely that it was the Court's ruling that should the defendant choose to testify, that he would be opening the door to drug use as it would affect his ability to recall as a witness.

THE COURT: Well, what I said is that's a possibility. It's only a matter of common sense of law, because just as you were challenging the testimony of the victim as to her ability to recall dates and times over that period of time, to the extent he would be testifying about that, that could impact his ability to recall.

*T.T. 3, pp. 3-4.*

Hence, there was never any evidentiary ruling entered on whether Appellant's drug use was admissible. Appellant's request was made prior to trial and clearly a ruling was reserved for trial based on the state of the record at the time. To say that Appellant was denied his "right to testify" because of an adverse court ruling about drug use is misleading.

Appellant also states this right was undermined when the Court ruled his statement to the police was inadmissible despite parts being admitted during the Commonwealth's case in chief. The portions introduced by the Commonwealth were admitted pursuant to the hearsay exception which allows statements against interest. *See T.T. 2, p. 198.*

In Appellant's case-in-chief, he sought to introduce portions which would have supported his versions of events. "Where a defendant seeks at trial to introduce his own statements made at the time of arrest to support his version of the facts such testimony is clearly offensive to the hearsay rule." *Commonwealth v. Murphy*, 425 A.2d 352, 356 (Pa. 1981). The purpose of this rule is to not allow an accused to circumvent the Commonwealth's cross examination, which in this case includes evidence of *crimen falsi*, by introducing an exculpatory statement of Appellant in lieu of live testimony. Therefore, Appellant's prior exculpatory statements were properly excluded in the absence of his trial testimony.

22

## CONSISTENCY OF VERDICT

Appellant states the jury verdict was so inconsistent that it called into question its validity and therefore the Court erred in denying Appellant's Motion for a New Trial. Jury verdicts are presumed to be consistent unless there is no reasonable theory to support the jury's verdict. *McDermott v. Biddle*, 674 A.2d 665, 667 (Pa. 1996). Inconsistent verdicts, even if logically perplexing, are not necessarily considered a mistake and do not constitute a basis for reversal so long as there is sufficient evidence to support the conviction. *Commonwealth v. Houck*, 102 A.3d 443, 451 (Pa. Super. 2014). Inconsistent verdicts do not constitute a specific finding in relation to certain evidence. *Commonwealth v. Miller*, 35 A.3d 1206, 1213 (Pa. 2012).

That Appellant was acquitted of the IDSI does not speak to the jury's determination of K.L.C.'s overall credibility and does not vitiate the validity of the other verdicts. K.L.C. gave very detailed testimony about each of the incidents of abuse for which Appellant was found guilty. By comparison, K.L.C. was not able to remember as many details about the incident on which the charge of IDSI was based. There are a number of reasons this could be the case, other than K.L.C. is not credible *en toto*. It is reasonable that the jury found that K.L.C.'s testimony was credible as to the other charges but that the Commonwealth did not meet its burden of proof related to the IDSI charge.

Consequently, Appellant is not entitled to a new trial on the basis that the verdicts were inconsistent.

## SEXUALLY VIOLENT PREDATOR DETERMINATION

Appellant argues the Commonwealth did not meet its burden and therefore the Court improperly found Appellant to be a sexually violent predator. Appellant states there was "a complete lack of evidence" that Appellant's diagnosis of Anti-Social Disorder affected his

23

volitional capacity and predisposed him to criminal sexual acts and there was no evidence of prior sexually deviant behavior.

A sexually violent predator is an individual convicted of a sexually violent crime who has a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses. 42 Pa.C.S.A. §9799.12. An individual is determined to have a "mental abnormality" when he suffers from a "congenital or acquired condition ... that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.*

A sexually violent offense is considered "predatory" when it involves "an act directed at a stranger or at a person with whom a relationship has been instituted, established, maintained, or promoted, in whole or in part, in order to facilitate or support victimization." 42 Pa.C.S.A. § 9799.12. Thus, whether the individual is classified as a sexually violent predator is determined based on both the force that drove the individual to commit the crime at hand and whether the offender's propensity to re-offend. *Commonwealth v. Stephens*, 74 A.3d 1034, 1038-1039 (Pa. Super. 2013). The risk of re-offending is not an independent element of the SVP determination, rather one factor that must be considered. *Id.*

The Commonwealth has the burden of proof by clear and convincing evidence that the individual is a sexually violent predator. 42 Pa.C.S.A. This standard is met when the evidence is "so clear, direct, weighty and convincing as to enable [the trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [at] issue." *Commonwealth v. Prendes*, 97 A.3d 337, 355 (Pa.Super. 2014). On appeal, the evidence must be viewed in the light

24

most favorable to the Commonwealth and the reviewing Court should not substitute its judgment for that of the trial court. *Id.*

A determination of whether an individual is a sexually violent predator is triggered by a conviction of a sexually violent offense. 42 Pa.C.S.A. § 9799.24(a) Upon receipt of a court order, a member of the Sexual Offenders Assessment Board ("SOAB") conducts an assessment of the individual to determine if he is an SVP. 42 Pa.C.S.A. § 9799.24(b). In making this determination, the SOAB board member must consider:

(1) Facts of the current offense, including:
    (i) Whether the offense involved multiple victims.
    (ii) Whether the individual exceeded the means necessary to achieve the offense.
    (iii) The nature of the sexual contact with the victim.
    (iv) Relationship of the individual to the victim.
    (v) Age of the victim.
    (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
    (vii) The mental capacity of the victim.
(2) Prior offense history, including:
    (i) The individual's prior criminal record.
    (ii) Whether the individual completed any prior sentences.
    (iii) Whether the individual participated in available programs for sexual offenders.
(3) Characteristics of the individual, including:
    (i) Age.
    (ii) Use of illegal drugs.
    (iii) Any mental illness, mental disability or mental abnormality.
    (iv) Behavioral characteristics that contribute to the individual's conduct.
(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.
    42 Pa.C.S.A. § 9799.24(b).

All factors need not be present to support an SVP determination nor are there a specific number of factors that must be met. *Prendes*, 97 A.3d at 358. The Court ultimately determines whether the Commonwealth has presented evidence sufficient to establish by clear and

25

convincing evidence that the individual has met the statutory definition of a sexually violent predator. *Id.*

On March 19, 2015, the SVP determination process was triggered when Appellant was found guilty after a trial by jury of two Tier III sexual offenses and two Tier I sexual offenses.[6] 42 Pa.C.S.A §9799.14. Each of these were factually based on the Appellant engaging in sexual contact with K.L.C., a child under the age of 13 years old. By Order dated March 23, 2015, an assessment was ordered to determine whether Appellant is a sexually violent predator. Brenda M. Manno conducted the assessment and was recognized at the SVP hearing as an expert in the field of behavior assessment and treatment of sexually violent predators.[7]

At Appellant's SVP hearing, which was conducted prior to his sentencing on June 26, 2015, Ms. Manno testified extensively about each statutory factor including Appellant's diagnosis of Anti-Social Disorder:

> MS. MANNO: Yes. We look at whether or not there are multiple victims in this case, and there's only one victim. Whether or not the offender exceeded the means necessary to achieve the offense. The victim discusses several incidents of offenses. She did discuss an incident where she was in the woods with her father, and she stated that he wanted her to engage in sexual activity. She declined, that he put her, she referred to it, in a sleeper hold, and she passed out, and when she woke up, he was sexually fondling her genital area.
>
> So I found that there was exceeding the means necessary to achieve the offense.
>
> The nature of the sexual contact with the daughter involved exposing her, attempting to have her perform sexual acts on him and digitally penetrating her vagina. As I stated, he was the biological father of this child. She was between seven to twelve year of age at the time that the abuse incidents occurred.
>
> I did find that there was unusual cruelty present in the allegations of the offending behavior.

---

[6] Criminal attempt: Involuntary Deviate Sexual Intercourse with Child and Aggravated Indecent Assault of a Child are Tier III sexual offenses. Corruption of Minors and Indecent Assault are Tier 1 offenses.
[7] Ms. Manno is a licensed clinical social work and a board member for the Sexual Offender Assessment Board ("SAOB") since 1998. *N.T., p. 5.* Since her appointment to the SAOB, she has conducted 1,486 evaluations, 985 of which were found to be sexually violent predators. *N.T., p. 6.*

I did not find, in the record, that she had mental limitations that increased vulnerability. However, I felt she was vulnerable due to her young age at the time of the assaults and the fact that he held the role of her biological father.

We do look at prior offending history. He has an extensive prior criminal history both as a juvenile and an adult. He has completed prior sentences. He has not been previously court ordered to engage in any sex offender specific treatment nor, to my knowledge, did he ever seek that out on his own.

We look at characteristics of him. He would have been between twenty-seven to thirty-three years of age at the time of the incidents. He did admit a lengthy history of illegal drug use. He even reported in some of the psychiatric evaluations that he self-medicated through substance abuse.

He does have a prior mental health history for diagnosis and treatment.

As I outlined, as a juvenile, he was evaluated at Hamot Hospital, and given diagnosis of conduct disorder as a child. He also was given a post-traumatic stress disorder diagnosis, depressive disorder not otherwise specified and polysubstance abuse and that would have been when he was fifteen years of age. So we have that history established of the conduct disorder.

There were several different reports from Stairways. I noted one Stairways Behavioral Health report in October of 2013. At that time they had concerns because Mr. Crooks presented with hallucinations of wanting to beat people. He indicated that he had engaged in cutting and burning behaviors himself.

He admitted a history of homicidal ideations. He referred back to behavior as a child stating that he was in trouble for taking a pistol to school when he was thirteen years of age.

He also noted a history of both physical and sexual abuse to him. At that time, he was diagnosed with bipolar disorder unspecified, antisocial personality disorder. There was another May 13th Stairways evaluation that also diagnosed him with antisocial personality disorder. So there's been a lengthy history of prior mental health diagnosis, hospitalizations and treatment.

Behavioral characteristics, I talk about the fact he does have a prior criminal history, although none of those are noted sexual in nature.

*N.T. p. 9-11.*

Based on this evaluation, Ms. Manno agreed with the historic diagnosis of anti-social personality disorder. Ms. Manno also went through each of the diagnostic criteria for anti-social personality disorder the DSM in relation to Appellant:

MS. MANNO: It indicates that there is a pervasive pattern disregard for and the violation of the rights of others occurring since the age of fifteen as indicated by three or more of the following and it gives seven specific factors. It says that there's failure to conform to social norms with respect to lawful behaviors as indicated by repeatedly performing acts that are grounds for arrest, which we clearly have in this case. Deceitfulness, as indicated by repeated lying, use of aliases or conning others for personal profit or pleasure. Impulsivity or failure to plan ahead. Irritability and aggressiveness, as indicated by repeated physical fights or assaults which I've seen in the records. Reckless disregard for safety of self and others, which I've seen. Consistent irresponsibility, as indicated by repeated failure to sustain consistent work behavior or honor financial obligations.

*N.T. p. 13.*

When asked what relevance this diagnosis had to SVP status, she recalled the history of ideations of physical harm to others, which manifested in Appellant putting K.L.C. in a choke hold when she refused his sexual advances. *N.T. p. 11.* Ultimately, Ms. Manno concluded Appellant's anti-social personality disorder, a lifetime disorder, would make him likely to reoffend. Specifically she commented that he was someone who "no matter what the situation, he engages in behavior that he desires or that benefits him, disregarding how that may affect other people." *N.T. p. 12.*

Additionally, Ms. Manno found Appellant's conduct demonstrated predatory behavior as set forth in the statute:

Clearly, this is not a stranger victim, this is his child. The relationship was initiated and established by birth, but I find maintenance or promotion of that relationship, at least in part, from the father/daughter relationship to the sexual realm in the fact that over a period of years the victim has reported more than one incident where he has attempted or made her engage in sexual activity with him.

Ultimately, Ms. Manno concluded based on a reasonable degree of professional certainty that Appellant is a sexually violent predator under the statute. *N.T. p. 14.*

28

The Court accepted Ms. Manno's opinion and her reasoning in finding the Commonwealth met its burden of proof to establish Appellant met the statutory criteria to be classified an SVP. Appellant correctly states there is no evidence of prior deviate sexual acts. However, prior history is only one factor to be considered in evaluating whether a defendant met the statutory criteria to be classified a sexually violent predator. Appellant's counsel thoroughly cross examined Ms. Manno as to this fact and Ms. Manno considered the lack of this factor when formulating her opinion. Absence of one particular factor does not negate a finding an individual is an SVP. Numerous other factors, as testified to by Ms. Manno were present which supported the finding that Appellant met the statutory criteria to be designated a sexually violent predator. Therefore, the Commonwealth met its burden and Appellant was correctly designated a sexually violent predator.

## CONCLUSION

For the reasons stated herein, Appellant's claims are waived and/or meritless.

BY THE COURT:

DATE: 9/22/15

WILLIAM R. CUNNINGHAM, JUDGE

cc: District Attorney's Office
Tina Fryling, 509 Sassafras St., Erie, PA 16507

29