**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Michael FIGUEROA, Appellant.**

Superior Court of Pennsylvania.

Argued March 23, 2004.

Filed Sept. 17, 2004.

Murray B. Dolfman, Philadelphia, for appellant.

Jason Fetterman, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: STEVENS, MONTEMURO *, and KELLY, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County on May 5, 2003. On January 28, 2003, Appellant was convicted of criminal conspiracy[1] and two counts of theft by deception[2]. Herein, Appellant contends that (1) the verdict was against the weight of the evidence, (2) the evidence was insufficient to support Appellant's convictions on all charges, (3) the trial court erred in not granting a new trial on the grounds of newly discovered evidence, (4) the trial court erred in allowing Williams to testify, and (5) the trial court erred in failing to take Judicial Notice of Philadelphia's legal practices regarding the preparation and execution of deeds. We affirm.

¶ 2 The trial court opinion aptly summarizes the evidence adduced at trial as follows:

Between the years of 1995 and 1996 [Appellant] became acquainted with [co-conspirator Rickie] Williams and Shaheen Mohammed, and the three men discussed the process of purchasing and transferring distressed [real] property. This process included identifying various abandoned properties as distressed, looking up the corresponding deeds in City Hall, selling the properties to themselves, alleged family members[,] or other third parties[,] forging new deeds[,] and then creating and delivering new, yet false, deeds to these parties.

On December 27, 1999, Williams and [Appellant] arranged to fraudulently transfer property on 127 West Washington Lane, Philadelphia, PA from the deceased owner Paul Robinson to Williams. Although [Appellant] did not own the property, nor had he inherited it, [Appellant] accepted two (2) cars and approximately $1,500.00 from Williams and in return provided Williams with the deed to the property.[3] On December 29, 1999, Williams, through a second deed, transferred this same property from a["]Michael Owens["] to Khadijah Brockington, Williams's wife. Because this deed listed Brockington as the sister-in-law to Owens, a [city transfer] tax exemption was listed. No relationship, however, existed between Brockington and Owens. Consequently, Owens was later identified as [Appellant], ["]Owens["] being the [Appellant's] mother's maiden name.

Williams also participated in other fraudulent property transfers with various individuals. The police investigated Williams's activities with these individuals and the investigations resulted in numerous arrests. . . .

Trial court opinion, dated 9/2/03 at 1–2.

¶ 3 Following a bench trial beginning January 27, 2003, Appellant was convicted of criminal conspiracy and two counts of theft by deception. On February 11, 2003, Appellant filed several motions prior to sentencing, including a motion for extraordinary relief, a motion for arrest of judgment, a motion for a new trial, and a motion for stay of bail. The trial court denied all motions, however, and, on May 8, 2003, sentenced Appellant to two and a half (2½) to five (5) years for each charge,

---

* Retired Justice Assigned to the Superior Court.

1. 18 Pa.C.S.A. § 903.

2. 18 Pa.C.S.A. § 3922.

3. Williams testified at trial that he gave Appellant the cars and money because Appellant was to "deliver the house." N.T. 01/29/03 at 81.

sentences to run concurrently, and imposed mandatory court costs and $500 in fines or restitution. This timely appeal follows.

¶ 4 Appellant first contends the verdict was against the weight of the evidence, an issue he has preserved by raising it before the trial court in a pre-sentencing motion for a new trial. Pa. R.C.P. 607(a)(2). The weight of the evidence is strictly within the province of the fact finder, who is free to believe all, part, or none of the evidence presented and determines the credibility of a witness. The verdict of the fact finder may only be overturned if it is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (2003).

¶ 5 In the present case, Appellant contends the verdict is against the weight of the evidence because trial court failed to give proper weight to the testimony of Rickie Williams, who testified that the property in question was in the physical possession of a squatter. The presence of a squatter on the premises, however, is not a defense to the crime of theft by deception.

¶ 6 Theft by deception requires that the accused "obtain or withhold the property of another." 18 Pa.C.S.A. § 3922(a). The statute defines "obtain" as "to bring about a transfer or purported transfer of legal interest in property, whether to the obtainer or another." 18 Pa.C.S.A. § 3901. Herein, the Commonwealth alleged that Appellant was involved in a criminal conspiracy to transfer a legal interest in a property located in 127 West Washington Lane via two forged deeds. Therefore, the squatter's actual possession of the property is immaterial to the criminal charge of theft by deception. Accordingly, we find that the verdict was not against the weight of the evidence.

¶ 7 Appellant next claims that the evidence was insufficient to support his convictions for criminal conspiracy and two counts of theft by deception. When reviewing a case to determine the sufficiency of the evidence, the court must view the evidence presented in the light most favorable to the verdict winner, and draw reasonable inferences from that evidence. *Commonwealth v. Ketterer*, 725 A.2d 801, 803 (Pa.Super.1999) (citations omitted).

¶ 8 Appellant's first sufficiency challenge states that the Commonwealth failed to prove beyond a reasonable doubt the value of the stolen real property—a necessary element to grading the offense. A person is guilty of theft by deception when he intentionally obtains or withholds property of another by (1) creating or reinforcing a false impression; (2) preventing or another from acquiring information which would affect his judgment of a transaction; or (3) failing to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship. 18 Pa.C.S.A. § 3922.

¶ 9 Under Pennsylvania law, the classification of theft offenses is based upon the value of the stolen property. *Commonwealth v. Hanes*, 361 Pa.Super. 357, 522 A.2d 622, 625 (1987). Accordingly, theft by deception is a felony of the third degree when the "amount involved exceeds $2,000, or if the property stolen is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle, or in the case of theft by receiving stolen property, if the receiver is in the business of buying or selling stolen property." 18 Pa.C.S.A. § 3903(a.1). Appellant argues that the proper measure for valuating the amount of property stolen in this case is the city's loss of the four percent transfer tax that

was exempted on the two purported family conveyances involving Appellant/"Michael Owens." We disagree.

¶ 10 The value of stolen property is "the market value of the property, at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime." It is not the loss incurred by the state as a result of the theft. 18 Pa.C.S.A. § 3903(c)(1). The Commonwealth established that Appellant stole through deception real property at 127 West Washington Lane, and that the fair market value of this real property was thirty-seven thousand, two hundred sixty nine dollars ($37,269.00), an amount clearly in excess of the $2,000.00 minimum set by § 3903(a.1). Appellant was, therefore, properly charged and convicted of third-degree felony theft by deception.

¶ 11 Appellant also contends the evidence was insufficient to support his convictions on the count of criminal conspiracy. A conviction for criminal conspiracy is sustained where the Commonwealth establishes that the defendant entered an agreement to commit or aid in an unlawful act with another person or persons with shared criminal intent and one of the conspirators committed an overt act in furtherance of the agreed upon crime. *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa.Super.2002); see also 18 Pa. C.S.A. § 903.

¶ 12 The essence of a criminal conspiracy is the agreement made between the co-conspirators. *Commonwealth v. Murphy*, 577 Pa. 275, 844 A.2d 1228, 1238 (2004). "Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient." *Lambert*, 795 A.2d at 1016. Additional proof that the defendant intended to commit the crime along with the co-conspirators is needed, that is, that the Appel-

lant was "an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." *Id.*

¶ 13 Proof of a conspiracy rarely arises through direct evidence of a defendant's intent or the conspirators' agreement; rather, conspiracy is almost always proven through circumstantial evidence. *Murphy, supra.* "The relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators [may link the defendant to the alleged conspiracy beyond a reasonable doubt.]" *Id.* (quoting *Commonwealth v. Spotz*, 552 Pa. 499, 716 A.2d 580, 582 (1998)). This Court has identified factors to consider in assessing circumstantial evidence:

> Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

*Lambert*, 795 A.2d at 1016 (citations omitted).

¶ 14 Once there is evidence of a conspiracy, all conspirators are equally criminally responsible for the acts of their co-conspirators committed in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action. *Lambert*, 795 A.2d at 1017. Even if a defendant did not act as a principal in committing the underlying crime, therefore, he is still criminally

liable for the actions of the co-conspirator taken in furtherance of the conspiracy. *Lambert*, 795 A.2d at 1016.

¶ 15 Viewed in the light most favorable to the Commonwealth as verdict winner, the circumstances of this case established a sufficient "web of evidence" to find that Appellant conspired to steal title to 127 West Washington Street. First, Appellant's association with Williams was established by Appellant's own admission to investigator Quintile that he knew Williams for several years and taught him the business of buying and selling distressed properties. N.T. 1/28/03 at 83.

¶ 16 Second, Appellant participated in the object of the conspiracy, namely, stealing title to 127 West Washington Street, when he agreed to provide Williams with title and accepted advance payment from Williams for this service. Appellant's apparent failure to carry out his end of the bargain—leaving Williams to prepare and file fraudulent documentation himself—does not negate that Appellant initiated the illicit agreement and was paid in advance to acquire title for Williams. Indeed, in tipping Williams about the property and taking advance payment, Appellant practically guaranteed that his one-time pupil Williams would decide that he had no alternative but to carry out the theft himself just to recoup his payment to Appellant.

¶ 17 The circumstantial evidence thus sufficed to establish beyond a reasonable doubt that Appellant conspired to steal title to 127 West Washington Lane. All three elements necessary to a conspiracy conviction—an illicit agreement with shared intent, and a co-conspirator's overt act in furtherance of the conspiracy were therefore established beyond a reasonable doubt. Accordingly, we find no merit to Appellant's claim to the contrary.

¶ 18 Appellant's third claim is that the trial court erred in not granting a new trial due to newly discovered evidence, namely that he had located the heir of Robinson, Felix Melendez (Melendez), his ex-wife Deborah Taylor Melendez, and one Watkins, nephew of deceased owner Paul Robinson. Appellant claims that they are all prepared to testify that Melendez was the true heir of Robinson and that Appellant made attempts to locate Melendez and conduct a legal transfer of 127 West Washington Lane. However, a new trial shall be granted on the basis of after-discovered evidence where defendant proves, by a preponderance of the evidence that:

1. the evidence has been discovered after trial and could not have been obtained prior to the conclusion of trial by the exercise of due diligence;

2. the evidence is not merely corroborative or cumulative;

3. the evidence will not be used solely for impeachment purposes; and

4. the evidence is of such a nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Wright*, 832 A.2d 1104 (Pa.Super.2003) (citations and quotations omitted). Appellant claims the testimony of Melendez constitutes newly discovered evidence because he could not be located prior to trial. However, in his pre-sentencing motion for a new trial, he states that following Appellant's conviction, "a more intensive investigation was conducted", resulting in the location of Melendez. Motion for Extraordinary Relief at 5. Appellant offers no explanation why such due diligence could not have been exercised prior to trial.

¶ 19 Furthermore, Appellant provides no reasoning why the nature of Melendez's testimony concerning his rightful ownership of the property and his request to find

a buyer for the property in question is such that a different verdict would likely have resulted. Appellant also does not explain why Melendez had not been located before trial and why his testimony regarding Robinson's will was of such a nature as to lead to a different result.

¶ 20 As to Melendez's ex-wife, Appellant clearly knew of her location prior to trial because, as stated in his pre-sentencing motion for extraordinary relief, he had contacted her and paid her to find Felix Melendez. *Id.* Accordingly, the trial court did not err in its denial of Appellant's motion for a new trial on the basis of newly discovered evidence as Appellant failed to meet his burden by a preponderance of the evidence.

¶ 21 Appellant contends the trial court erred in allowing Williams to testify because the District Attorney had informed the Court and counsel on January 23, 2003 that he would not be called to testify. However, Appellant has waived this issue on appeal for failure to cite to pertinent authority in developing his argument. *Commonwealth v. Genovese,* 450 Pa.Super. 105, 675 A.2d 331, 334 (1996). Nevertheless, were we to address Appellant's claim, we would find it entirely lacks merit. Appellant and the court were informed of the District Attorney's intention to call Williams to the stand before the trial had begun. N.T. 01/28/03 at 4. Appellant concedes that Williams was listed as a witness and that counsel was given a one day period by the court to prepare for cross examination following the Commonwealth's declaration of their intent to call Williams. Appellant's brief at 20. N.T. at 5. Therefore, Appellant was provided with adequate notice and was not prejudiced by the admission of Williams's testimony.

¶ 22 Finally, Appellant contends that the trial court erred in failing to take notice "of the legal practice in the county and city of Philadelphia that the preparer of a deed normally, and in most cases, puts his name and address in a specified block." Appellant's Brief at 21. As stated in Pa. R.E. § 201, taking judicial notice of an adjudicative fact is discretionary, "whether requested or not". Pa.R.E. § 201(c). Taking judicial notice is mandatory where the court is requested to take judicial notice and is "supplied with the necessary information." Pa.R.E. § 201(d).

¶ 23 In the present case, Appellant's counsel simply told the court that the preparer of a deed normally "puts his name and address in that box," in an attempt to imply that Appellant was not listed as the preparer of the deed. No additional information was provided to the court, even when opposing counsel questioned the lack of instruction in the box as to what should be put on it. The court, therefore, did have the discretion to deny counsel's request to take judicial notice as no information was presented to support counsel's contention. Furthermore, in keeping with § 201(e), which allows a party a "an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed," trial court encouraged Appellant's counsel to "work out a stipulation a little later on." N.T. 01/28/03 at 58. In conclusion, we find that the trial court did not commit an error in failing to take judicial notice of the legal practice of inserting the preparer's name in a particular part of a deed when preparing it.

¶ 24 Judgment of sentence affirmed.