J-S10038-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRAVIS WADE MATTHEWS | : | |
| | : | |
| Appellant | : | No. 944 MDA 2020 |

Appeal from the Order Entered June 22, 2020
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0000656-2017

BEFORE: MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MAY 13, 2021**

Travis Wade Matthews (Matthews) appeals the order of the Court of Common Pleas of Luzerne County (PCRA court) denying his motion filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. In 2017, Matthews was found guilty of five offenses related to the robbery of a pizza delivery driver[1] and was sentenced to a total prison term of 10.5 to 21 years. He now seeks to have two pieces of evidence DNA tested, as he claims that the results of such testing would be exonerating. Because Matthews

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Matthews was found guilty of two counts of robbery, one count of conspiracy to commit robbery, one count of unlawful taking, and one count of simple assault. **See** 18 Pa.C.S. §§ 3701(a)(1)(ii), 903, 3921(a), and 2701(a)(3), respectively.

cannot establish his eligibility for this relief, the PCRA court's denial of the motion is affirmed.

**I.**

The following facts are taken from the certified record. On the evening of the subject offenses in 2017, Bruce Eckersley worked as a pizza delivery driver. He was dispatched to deliver two pizzas to 53 Elizabeth Street in Pittston, Pennsylvania. The food was carried in a protective "heat bag" that was labeled with the driver's name, the delivery address and the delivery time.

Moments after he had arrived at the delivery address and exited his car, Eckersley was approached by two men. One man held Eckersley's arms from behind, while the other man pointed the muzzle of an apparent pistol into his ribs. Both assailants wore dark scarves to cover their faces, but Eckersley recalled that the one holding the gun was wearing an Atlanta Hawks baseball cap. The two perpetrators told Eckersley to be still and quiet while they took his wallet, phone and the heat bag containing the two pizzas. Once the robbery was completed, they drove away.

Eckersley was able to use the phone in a nearby home to call the police. He reported that two men had robbed him and that the one holding a gun had worn an Atlanta Hawks baseball cap and a scarf. Police investigated and discovered that the delivery call had been put in by a number identified with Sara Snee (Matthews' sister) and Terry Williamson (Matthews' co-defendant).

The investigating officers also confirmed that the resident of the delivery address had not ordered the two pizzas.

Snee resided at 133 Winter Street, and when police arrived at that address, they found that the heat bag taken from Eckersley was left in a nearby dumpster. When Snee arrived home, officers who had been surveilling the area knocked on her door. She let the officers in, and once inside, they noticed that children were eating pizza from the same two pizza boxes taken from Eckersley during the robbery.

While surveilling Snee's home, the police also recorded the license plate number of a parked vehicle with three passengers. They followed the vehicle when it drove away, and as soon as the discovery of evidence in Snee's home was relayed to them, they stopped the vehicle to question the passengers.

Inside, police observed Matthews in the back seat and Williamson in the front seat, holding a piece of pizza. A woman named Robin Hurtt was driving. The officer who stopped the vehicle saw within plain view the butt of a gun under Williamson's seat and within arms' reach of Matthews. At that moment, Matthews was wearing a scarf and an Atlanta Hawks baseball cap, similar to the items Eckersley had described. The weapon was later identified as a pellet gun.

At Matthews' trial, his identity as one of the robbers was a key fact in dispute. Testifying as a defense witness, Williamson stated that he and a new acquaintance, a man named "Miracle," had agreed to rob a delivery driver.

He testified that he was the one who held a weapon during the robbery, contradicting what he had told police immediately after his arrest – that unlike himself, Matthews "rolls with a gun."

Williamson confirmed that Matthews had worn the Atlanta Hawks baseball cap on the night that Eckersley was robbed, but Williamson explained that he gave the baseball cap to Matthews upon arriving at Snee's apartment after the robbery had taken place. The police were never able to find or identify the mysterious person Williamson referred to as "Miracle."

Following the jury trial, Matthews was found guilty and sentenced to a prison term of 69 to 138 months on one of the robbery counts; a consecutive prison term of 57 to 114 months on one of the conspiracy counts; and a concurrent prison term of 16 to 32 months as to the weapon possession count. For the remaining counts, Matthews received no further penalty.

Matthews appealed and the convictions were upheld. *See Commonwealth v. Matthews*, 196 A.3d 242 (Pa. Super. 2018); *see also Commonwealth v. Matthews*, 689 MAL 2018 (Pa. April 1, 2019) (denying petition for allowance of appeal). Matthews timely sought PCRA relief in the form of a request for DNA testing.

The PCRA court summarily denied the testing after having provided Matthews with advance notice of its intent to do so. *See* Pa.R.Crim.P. 907. The PCRA court ruled that Matthews was ineligible for post-conviction DNA testing in relevant part because it had not been requested at the time of trial

- 4 -

and there was no reasonable probability of the test result being exonerating.

Matthews timely appealed, and both Matthews and the PCRA court complied

with Pa.R.A.P. 1925.

On appeal, Matthews presents three issues:

1. The [PCRA] court erred when it held in its Rule 907 notice that [Matthews] failed to satisfy the threshold requirements for DNA testing, even though [Matthews] wanted the gun to be fingerprinted.

2. The [PCRA] court erred when it ruled in its Rule 907 notice that [Matthews] did not present a prima facie case that exculpatory results from DNA testing would establish actual innocence, even though there was testimony that [Matthews] had brandished the gun during the robbery[.]

3. The [PCRA] court erred when it held in its Rule 907 notice that there is no reasonable probability that DNA testing would produce exculpatory evidence that would establish [Matthews'] actual innocence, even though, assuming DNA testing of the gun does not show [Matthews' DNA], and does show the DNA of Williamson and Miracle, it would confirm Williamson's testimony that he brandished the gun and that the gun belonged to Miracle.

Appellant's Brief, at 6 (issues renumbered).

**II.**

**A.**

From our review of Matthews' claims, the undisputed record evidence

and the applicable law, the PCRA court did not err in denying the requested

DNA testing of the baseball cap and pellet gun.[2]

_____

[2] "When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory

First, as the PCRA court found, Matthews did not satisfy the threshold requirements for DNA testing. At the post-conviction stage, DNA testing of evidence may be permitted in limited circumstances. The PCRA states in relevant part that where a conviction was entered after 1995, and the subject evidence was available for testing at the time of trial, post-conviction DNA testing may only be granted if:

> newer technology [than what was available at trial] could provide substantially more accurate and substantially probative results, **or** the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

42 Pa.C.S. § 9543.1(a)(2) (emphasis added).

In this case, Matthews seeks to have evidence tested that was available to him prior to his trial in 2017, and there is no allegation of any new technology since then that would produce a substantially more reliable result. Matthews was also represented at trial by counsel who never requested DNA testing or funds to pay for testing. The trial court could not have denied such a request, as would be required for Matthews' eligibility under the statute.

Matthews has argued that he satisfied one of those prerequisites by telling the trial court at a pretrial conference that he wanted the pellet gun to be dusted for fingerprints. Although Matthews did express interest in

---

requirements listed in Section 9543.1." **Commonwealth v. Williams**, 35 A.3d 44 (Pa. Super. 2011).

fingerprint testing of that item, the matter was dropped when Matthews' counsel explained that such a motion was not advised for strategic reasons, and that the testing of the evidence was not in his best interest. ***See*** Status Conference Transcript, 10/23/2017, at pp. 4, 9-10, 17-24.[3]

More importantly, a request for fingerprint testing is not the same thing as a request for DNA testing. The record, therefore, establishes that neither Matthews nor his trial counsel requested DNA testing or funds from the court to pay for the testing of the subject evidence, as would be necessary to satisfy a prerequisite of Section 9543.1(a)(2). The trial court was never given an opportunity to deny a request for DNA testing, so Matthews is not entitled to it now. ***See Commonwealth v. Williams*** 35 A.3d 44, 51 (Pa. Super. 2011); ***Commonwealth v. Walsh***, 125 A. 3d 1248, 1259 (Pa. Super. 2015); ***Commonwealth v. Perry***, 959 A,2d 932 (Pa. Super. 2008).

**B.**

Even assuming Matthews could meet one of the above threshold requirements (which he cannot), he would still be ineligible for post-conviction DNA testing because it would not be sufficiently exculpatory. In addition to the requirements discussed above, the PCRA court also imposes on applicants the burden of presenting a *prima facie* case that the DNA testing would

_____

[3] Matthews seems to concede that neither he nor his trial counsel ever sought the DNA testing of the baseball cap, and the denial of testing of that item was proper for the same reasons as those stated for the pellet gun.

establish the applicant's actual innocence. ***See*** 42 Pa.C.S. §§ 9543.1(c)(3), 9543.1(d)(2). "[A]ctual innocence" is defined as making it "more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." ***Commonwealth v. Payne***, 129 A. 3d 546, 556 (Pa Super. 2015).

Matthews argues in his second and third appellate grounds that the PCRA court erred in determining that he did not present a *prima facie* case that favorable results from the DNA testing would reasonably be likely to establish his actual innocence. He maintains that if his DNA is absent from the pellet gun and baseball cap, then he would be ruled out as the gunman in the robbery.

However, the DNA testing of the pellet gun and baseball cap would not necessarily support an alibi defense or otherwise prove that Matthews is innocent. At trial, the prosecution introduced evidence that he carried the gun and, more generally, that he participated in a criminal conspiracy with Williamson. The victim testified that one of the perpetrators was wearing an Atlanta Hawks baseball cap and a dark scarf, which is exactly what Matthews was wearing shortly after the robbery.

At the moment the police first detained Matthews, he was in a car with Williamson, who has admitted he was one of the two robbers. The pellet gun was under Williamson's seat and within reach of Matthews. Williamson at one point described Matthews as a person who often carried guns.

On these facts, the lack of Matthews' DNA on the weapon and baseball cap he was wearing when arrested would not refute the ample circumstantial evidence of Matthews' guilt. Moreover, even if Matthews could prove that the pellet gun and baseball cap did not bear his DNA, purportedly causing some doubt as to his identity as the gunman, he could still be held criminally liable for the offense of robbery as an unarmed co-conspirator of Williamson.[4]

Accordingly, Matthews did not present a *prima facie* case demonstrating that favorable results from the requested DNA testing would establish that it was more likely than not that no reasonable juror would have found him guilty. Because he failed to satisfy any of the threshold requirements for such relief, and DNA testing could not have been reasonably likely to result in exonerating evidence, the PCRA court did not err in denying the motion.

---

[4] "Once there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action." ***Commonwealth v. Figueroa***, 859 A.2d 793,798 (Pa. Super. 2004). A defendant may be convicted on wholly circumstantial evidence. ***Commonwealth v. Lehman***, 820 A.2d 766, 772 (Pa. Super. 2003).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2021