J-S26021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CALVIN MCKINNEY | : | |
| | : | |
| Appellant | : | No. 1464 MDA 2020 |

Appeal from the Judgment of Sentence Entered September 29, 2020
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0000188-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CALVIN L. MCKINNEY | : | |
| | : | |
| Appellant | : | No. 1467 MDA 2020 |

Appeal from the Judgment of Sentence Entered September 29, 2020
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0001117-2018

BEFORE: STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.: **FILED OCTOBER 06, 2021**

Calvin L. McKinney (Appellant) appeals[1] from the judgment of sentence imposed after a jury found him guilty of first-degree murder, conspiracy to commit murder, and perjury.[2]  We affirm.

On December 29, 2017, Appellant fired multiple shots at Keynen Guider (Victim), as the Victim was driving in downtown Harrisburg.  **See** Trial Court Opinion, 2/12/21, at 7-9.  Two days later, the Victim was again driving in Harrisburg when Appellant shot and killed him.  **See id.** at 9-13.  The trial court recounted the procedural history that followed:

> On January 24, 2018, [Appellant] was charged at Docket Number CP-22-000113-2018 [(attempt docket)] with one count [each] of criminal attempt – criminal homicide; recklessly endangering another person; firearms not to be carried without license; and possession of firearm prohibited.  Prior to trial, Counts 2 and 3 were withdrawn by the Commonwealth and Count 4 was severed.  Simultaneous to the aforementioned charges, [Appellant] was charged at Docket Number CP-22-CR-0001117-2018 [(murder docket)] with criminal homicide; conspiracy—criminal homicide; firearms not to be carried without a license; and possession of firearm prohibited.  Prior to trial, Count 2 was withdrawn by the Commonwealth and Counts 3 and 4 were severed.  [The attempt docket and murder docket] were formally joined on June 13, 2018.
>
> A jury trial was held before this [c]ourt from August 12 through August 16, 2019.  [Appellant] was found guilty at [the attempt docket] of criminal attempt – criminal homicide.  The jury was hung on the remaining charges at [the murder docket].  Based on what transpired during the first trial, [Appellant] was

---

[1] Appellant has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018); on February 17, 2021, this Court consolidated his appeals *sua sponte*.

[2] 18 Pa.C.S.A. §§ 2501(a), 903, and 4902(a).

charged with perjury on October 3, 2019 at Docket Number CP-22-CR-0000188-2020 [(perjury docket)]. A joinder hearing was held on February 4, 2020, and after submission of post-hearing briefs, this [c]ourt granted the Commonwealth's motion. Therefore, [the murder docket and perjury docket] were joined for purposes of trial.

A second jury trial was held before this [c]ourt on August 31 through September 3, 2020. [Appellant] was found guilty of [] 1st degree murder, conspiracy [], and perjury.

Trial Court Opinion, 2/12/21, at 1-2 (footnotes omitted).

On September 29, 2020, the trial court sentenced Appellant to life in prison without parole. Appellant filed a timely post-sentence motion which the court denied on October 22, 2020. Appellant timely appealed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents three questions for review:

1. Did the trial court err by granting the Commonwealth's motion to join Appellant's perjury case with the homicide case for trial?

2. Was the evidence presented at trial insufficient to sustain a verdict of guilt at First Degree Murder?

3. Did the trial court err by denying Appellant's motion for a new trial where the jury's verdict was against the weight of the evidence presented at trial?

Appellant's Brief at 5 (second and third questions reordered for disposition).[3]

_____

[3] In his Rule 1925(b) statement, Appellant raises an additional sufficiency claim. **See** Rule 1925(b) Statement, 12/9/20, at *1. However, because Appellant abandoned this claim in his brief, we do not address it. **See** Appellant's Brief at 5; **see also Commonwealth v. Briggs**, 12 A.3d 291, 310 n.19 (Pa. 2011), **cert. denied**, 132 S.Ct. 267 (2011) (refusing to address claim appellant raised with trial court but subsequently abandoned in brief).

In his first issue, Appellant claims the trial court erred in granting the Commonwealth's motion to join his perjury and murder cases for trial. Appellant's Brief at 17-20. Appellant argues:

> The trial court erred when it granted the Commonwealth's motion to join a perjury charge related to Appellant's first homicide trial to the Appellant's homicide docket for retrial where the majority of the evidence presented for the homicide would not have been admissible as evidence of the perjury. … Further, the Appellant was prejudiced because of the charges being joined, since a guilty verdict could have resulted from the cumulative evidence of both charges and the jury's assumption that Appellant is culpable because he was charged with both things and not just either a homicide or perjury separately.

*Id.* at 15. Appellant contends that "if presented with all the evidence from the homicide case while also on trial for the perjury, it would not be a difficult assumption to believe that the scales of justice might tip in favor of a guilty verdict based on the cumulative evidence of both charges, or simply the jury's belief that 'he must be a bad person' if he is charged with homicide and perjury together." *Id.* at 20.

> We begin by recognizing that the "general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time consuming duplication of evidence." ***Commonwealth v. Patterson***, 546 A.2d 596, 600 (Pa. 1988). In reviewing a trial court decision to consolidate or to sever offenses for trial, our standard is abuse of discretion. Offenses charged in separate informations may be tried together if they are "based on the same act or transaction" or if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.Pro. 582(A)(1).

*Commonwealth v. Thomas*, 879 A.2d 246, 260 (Pa. Super. 2005) (some citations omitted). "Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant." *Commonwealth v. Wholaver*, 989 A.2d 883, 898 (Pa. 2010).

The Pennsylvania Supreme Court has established a three part test for deciding if joinder is appropriate: 1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; 2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, 3) whether the defendant will be unduly prejudiced by the consolidation of offenses. *Thomas*, *supra* (citing *Commonwealth v. Lark*, 543 A.2d 491, 497 (Pa. 1988)).

Instantly, the trial court explained:

> During Appellant's first jury trial, he testified under oath that he travelled to Philadelphia during the early morning hours of December 31, 2017, to stay at a prepaid hotel room with his girlfriend for New Year's Eve. [To support his alibi], he submitted copies of his bank records and pointed to a specific charge to Priceline on December 10, 2017. Appellant testified that the December 10, 2017 charge to Priceline on his bank record was him booking the room in Philadelphia for New Year's Eve. During its investigation, the Commonwealth subpoenaed the records from Appellant's bank, as well as Priceline. In reviewing the records, the Commonwealth discovered that the December 10, 2017 charge was for a one-night stay at the Days Inn Grantville beginning on December 9, 2017. There was no evidence that Appellant had booked a hotel room in Philadelphia for New Year's Eve on December 31, 2017.

We find that the evidence for the perjury charge would be admissible in the homicide trial. Evidence of flight, lying to police or destroying evidence is circumstantial evidence of a defendant's consciousness of guilt. Therefore, Appellant's testimony at the previous trial, knowing that it was inaccurate and material to his defense, as well as evidence that he knew he was lying, would be admissible to prove consciousness of guilt. Likewise, the evidence of the homicide would be relevant in the perjury trial to provide context, as well as to show Appellant knew the statement he made was false at the time he made it and that the statement was material. Further, the charges are capable of separation as to not confuse the jury. Therefore, this [c]ourt did not abuse its discretion by granting the Commonwealth's motion for joinder.

Trial Court Opinion, 2/12/21, at 18-19 (citations edited).

The record supports the trial court's reasoning. The murder and perjury charges are related but distinct, and we discern no error in the court's determination that the perjury charge would be admissible at Appellant's murder trial to show consciousness of guilt. *See* Pa.R.E. 404(b)(2); *see also* N.T., 2/4/20, at 5 (defense counsel conceding evidence of perjury would be admissible at Appellant's murder trial). Similarly, Appellant's murder charge would be admissible at a perjury trial to show the falsification was material. *See* 18 Pa.C.S.A. 4902(b) ("Falsification is material … if it could have affected the course or outcome of the proceeding.").

Further, the facts and elements of murder and perjury are different and not confusing. As the Commonwealth states, "Juries are more than capable of separating two charges which differ significantly in their elements and perceived seriousness." Commonwealth Brief at 17; *see also* ***Commonwealth v. Collins***, 703 A.2d 418, 423 (Pa. 1997) (a jury is capable

- 6 -

of separating the evidence where the criminal offenses at issue are distinguishable in time, place, and parties involved).

Given the affirmative answers to the above two inquiries and consistent with the three-prong analysis set forth in *Lark*, *supra*, we examine Appellant's claim of prejudice.

> Under Pa.R.Crim.P 583, which addresses severance, the prejudice the defendant suffers due to joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime. The prejudice of which Rule 583 speaks is, rather, that which would occur if the evidence tended to convict the [defendant] only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Commonwealth v. Dozzo*, 991 A.2d 898, 902 (Pa. Super. 2010) (citations omitted).

Again, our review reveals no error. Appellant committed perjury to provide an alibi to his murder charge. There was no prejudice in permitting the jury to hear relevant evidence connecting Appellant to the two related but distinct crimes. Accordingly, the trial court did not abuse its discretion in granting the Commonwealth's request for joinder.

In his second issue, Appellant challenges the sufficiency of the evidence supporting his murder conviction. *See* Appellant's Brief at 24-26.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient

evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Leaner*, 202 A.3d 749, 768 (Pa. Super. 2019) (citation omitted).

Appellant asserts "the Commonwealth failed to prove beyond a reasonable doubt the identity of the shooter as Appellant." Appellant's Brief at 24. He states:

Specifically, none of the Commonwealth witnesses were able to place Appellant at the scene of the homicide on the night of December 31, 2017. The only Commonwealth eyewitness was Javon McKinnon, who was also wounded in the December 31, 2017 shooting. However, McKinnon only identified one shooter as being short, even though Appellant is over six feet tall. [] Except for vague descriptions of the shooter's vehicle during the attempted homicide and Ms. Goicoechea's contradicted testimony, no other evidence was presented by the Commonwealth to link [Appellant] to the December 29, 2017 shooting.

*Id.* at 25-26.

"To prove first-degree murder, the Commonwealth must demonstrate that the defendant acted with malice and a specific intent to kill, that a human

- 8 -

being was unlawfully killed, **that the defendant committed the killing**, and that the killing was intentional, deliberate and premeditated." *Commonwealth v. Chamberlin*, 30 A.3d 381, 394 (Pa. 2011) (citing, *inter alia*, 18 Pa.C.S.A. § 2502) (emphasis added).

"In addition to proving statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa. Super. 2018) (citations omitted). However, there "is no requirement that a homicide, including murder in the first degree, be proven by eyewitness testimony." *Commonwealth v. Hardcastle*, 546 A.2d 1101, 1107-08 (Pa. 1988). We have explained:

> Evidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of the perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

*Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (citations omitted). Circumstantial evidence alone may support a first-degree murder conviction. *See Chamberlin*, 30 A.3d at 394 ("Circumstantial evidence can itself be sufficient to prove any element or all of the elements of criminal homicide.").

Instantly, the trial court detailed the evidence refuting Appellant's

sufficiency claim as follows:

> The testimony and evidence adduced at trial, together with all reasonable inferences derived therefrom, is sufficient to sustain Appellant's conviction of [first-degree murder]. On December 27, 2017, there was an altercation between Appellant and [Victim]. Appellant was driving a pepperdust metallic Chevrolet Impala with a license plate number of FAC5639 that he rented from Enterprise. Appellant's girlfriend testified that [Victim] was driving a black vehicle.
>
> Two days later, on December 29, 2017, [Ariele] Morrison testified that [Victim] was driving her black Kia Optima. Around noontime, Teresa [Smith] was outside of her residence … bringing recycling bins in when she heard a popping noise. She walked to the street and saw a light-skinned male shooting up 20th Street. She went inside her home and called 911. [Carla] Goicoechea was inside of her residence on the second floor when she heard gunshots and looked out her window. She observed a black vehicle speeding away up 20th Street and a light-skinned male shooting toward the black vehicle.
>
> When police arrived, Ms. Goicoechea provided them information about the shooter. On January 15, 2018, Ms. Goicoechea met with Detective [Richard] Iachini and selected Appellant out of a photo array. Additionally, she identified Appellant in court as the same person she selected in the photo array as the shooter. Ms. Goicoechea watched the shooter get into what she believed was a brown Chevrolet Impala and provided three digits ("FCG") of the license plate. While on scene, police collected eleven .40 caliber cartridges.
>
> … In addition, Appellant's phone records show that he was in the area of 20th and Market Streets, very close to where the shooting occurred at the time it occurred.
>
> In the early morning hours of December 31, 2017, police responded to a call of a male shot near 1938 Brookwood Street. [Victim] was found in the driver's seat of his running vehicle with a gunshot wound to his head. Shortly thereafter, a second victim, [Javon] McKinnon, was located and had sustained injuries to the leg and groin area. Mr. McKinnon testified that he was with [Victim] in the early morning hours of December 31, 2017. [Victim] was dropping Mr. McKinnon off near 1938 Brookwood

Street when Mr. McKinnon saw two figures appear from behind his wife's van, shooting at them. Mr. McKinnon jumped back into the car and heard [Victim] scream out. While ducking from the gunfire and trying to grab his friend, Mr. McKinnon looked up and realized the car was rolling toward a pole (the car was running and still in drive when police arrived), and jumped out. He ran around and eventually ended back at his mother's home at 1938 Brookwood Street, where officers eventually located him.

Police collected a total of twelve cartridges from the scene. After analysis, it was determined that seven of the twelve cartridges were from the same unknown firearm and the remaining five were from a second unknown firearm. It was further determined that the seven cartridges collected on December 31, 2017 were from the same unknown firearm as the eleven cartridges collected on December 29, 2017. None of the cartridges collected and tested were from the firearm found in the [V]ictim's vehicle.

All of Appellant's cell phone activity prior to 3:00 A.M. on December 31, 2017, occurred in the City of Harrisburg. Specifically, Appellant received four phone calls between 12:38 A.M. and 1:28 A.M. on December 31, 2017, and each hit off the specific sector of each tower that would cover the direction of the homicide. Appellant's call activity shows that he remained in the Harrisburg area until approximately 3:00 A.M. when he travelled to the Philadelphia area presumably via the Pennsylvania Turnpike. Appellant's cell phone records show that he exchanged numerous text messages and phone calls with an individual … between 2:04 A.M. and 4:19 A.M. on December 31, 2017.

Based on the testimony and evidence adduced at trial, a jury could reasonably conclude that Appellant intentionally or knowingly caused the death of [Victim].

Trial Court Opinion, 2/12/21, at 22-24.

As accurately recited by the trial court, the above evidence, viewed in the light most favorable to the Commonwealth, was sufficient for the jury to convict Appellant of first-degree murder. **See Chamberlin**, 30 A.3d at 394. There is no merit to Appellant's sufficiency claim.

- 11 -

In his third issue, Appellant argues his murder conviction is against the weight of the evidence.[4]

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
> Moreover, appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Miller*, 172 A.3d 632, 642-43 (Pa. Super. 2017) (citations omitted).

Appellant argues his murder conviction is against the weight of the evidence because "the jury did not give proper weight to the testimony of Teresa Smith," the "jury gave more weight than it should have to the

---

[4] Appellant preserved this issue as required by Pa.R.Crim.P. 607 by raising it with the trial court in a post-sentence motion. *See* Post-Sentence Motion, 10/9/20, at ¶¶ 11-18.

- 12 -

testimony of Carla Goicoechea," and "the jury also did not give proper weight to the testimony of Sharayne Cook[.]" Appellant's Brief at 22-23.

In assailing the weight the jury gave to witness testimony, Appellant disregards established law which provides "while passing on the credibility of the witnesses and the weight of the evidence, [the jury is] free to believe all, part, or none of the evidence." *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted); *see also Commonwealth v. Figueroa*, 859 A.2d 793, 797 (Pa. Super. 2004) ("The weight of the evidence is strictly within the province of the fact finder[.]"). Appellant is essentially attempting to retry his case by having us reweigh the evidence, which is not the role of an appellate court. It is well-settled that we may not disturb findings of fact and determinations regarding credibility and weight of the evidence absent an abuse of discretion. *Miller*, 172 A.3d at 642-43. Rather, we review the exercise of the trial court's discretion in denying Appellant's weight claim. Upon review, there is ample support for the court's determination that "the verdict was not contrary to the weight of the evidence to the degree of shocking one's conscience." Trial Court Opinion, 2/12/21, at 28.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/6/2021